Filed:  September 11, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 96-24
(CA-94-769-3)

---

Dawud Majid Mu'Min,

Petitioner - Appellant,

versus

Samuel V. Pruett, etc.,

Respondent - Appellee.

---

O R D E R

---

The Court amends its opinion filed August 18, 1997, as follows:

On the cover sheet, section 1 -- the status of the case is changed from "Unpublished" to "PUBLISHED."

On the cover sheet, section 6 -- the section is corrected to begin "Affirmed by published opinion. . . ."

On page 2, section 2 -- the reference to use of unpublished opinions as precedent is deleted.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAWUD MAJID MU'MIN,
Petitioner-Appellant,

v.

No. 96-24

SAMUEL V. PRUETT, Warden,
Mecklenburg Correctional Center,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-94-769-3)

Argued: June 2, 1997

Decided: August 18, 1997

Before WILKINSON, Chief Judge, and WILKINS and
MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion,
in which Chief Judge Wilkinson and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Joseph William Wright, III, MCGUIRE, WOODS, BAT-
TLE & BOOTHE, L.L.P., McLean, Virginia, for Appellant. John H.
McLees, Jr., Assistant Attorney General, OFFICE OF THE ATTOR-
NEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** M.
Melissa Glassman, MCGUIRE, WOODS, BATTLE & BOOTHE,

L.L.P., McLean, Virginia, for Appellant. James S. Gilmore, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

---

## OPINION

WILKINS, Circuit Judge:

Dawud Majid Mu'Min appeals an order of the district court dismissing his petition for a writ of habeas corpus,[1] which challenged his Virginia conviction for capital murder and resulting death sentence. See 28 U.S.C.A. § 2254 (West 1994). [2] We conclude that the district

---

[1] Mu'Min named J. D. Netherland, former Warden of the Mecklenburg Correctional Center where Mu'Min is incarcerated, as Respondent in his petition. Subsequently, Samuel V. Pruett succeeded Netherland as Warden at that institution. For ease of reference, we refer to Respondent as "the Commonwealth" throughout this opinion.

[2] Because Mu'Min's petition for a writ of habeas corpus was filed on October 20, 1994, prior to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the amendments to § 2254 effected by the AEDPA do not apply. See Lindh v. Murphy, 117 S. Ct. 2059, 2067 (1997). We have not yet decided whether the provisions contained in § 107 of the AEDPA apply to Mu'Min, who filed his state habeas petition on August 7, 1992. See Bennett v. Angelone, 92 F.3d 1336, 1342 (4th Cir.) (noting that it is undecided whether the procedures established by the Commonwealth for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel satisfy statutory opt-in requirements of § 107, which would render those provisions applicable to indigent Virginia prisoners seeking federal habeas relief from capital sentences if an initial state habeas petition was filed after July 1, 1992), cert. denied, 117 S. Ct. 503 (1996). However, we need not address this issue because we conclude that habeas relief is inappropriate under the more lenient standards in effect prior to the recent amendments. See O'Dell v. Netherland, 95 F.3d 1214, 1255 n.36 (4th Cir. 1996) (en banc), aff'd, 117 S. Ct. 1969 (1997).

2

court correctly held that the refusal of the Supreme Court of Virginia, under the rule set forth in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), to consider the merits of the three issues Mu'Min seeks to present to this court constitutes an adequate and independent state-law basis for their denial. Consequently, federal habeas review of these issues is unavailable to Mu'Min unless he is able to demonstrate cause and prejudice or a miscarriage of justice. We further determine that Mu'Min has failed to make the showing necessary to excuse his default with respect to his claims that the state trial court erred in denying his motion for a change of venue and in admitting into evidence an order memorializing Mu'Min's 1973 conviction for first-degree murder. We also hold that regardless of whether Mu'Min can establish an excuse for the default of the claim that his constitutional rights were violated when the trial court refused to provide the jury with information regarding Mu'Min's parole eligibility, he is not entitled to the relief he seeks. Accordingly, we affirm.

I.

The underlying facts are fully set forth in the opinion of the Supreme Court of Virginia on direct appeal of Mu'Min's conviction and sentence. See Mu'Min v. Commonwealth, 389 S.E.2d 886, 889-90 (Va. 1990). Accordingly, we summarize them only briefly.

In September 1988, Mu'Min was an inmate of Haymarket Correctional Unit 26 in Prince William County, Virginia, having been convicted of first-degree murder in 1973 and sentenced to 48 years imprisonment. On September 22, Mu'Min and other inmates were assigned to work detail with the Virginia Department of Transportation (VDOT). During the morning, Mu'Min fashioned a weapon by sharpening a short piece of metal on a bench grinder and attaching a wooden handle to it. Mu'Min then walked away from VDOT headquarters and proceeded to a carpet store approximately one mile away. He argued with the proprietor, Gladys Nopwasky, and a struggle ensued during which Nopwasky was partially disrobed. Mu'Min beat Nopwasky severely and stabbed her multiple times with the weapon he had made, severing her jugular vein and pulmonary artery. He then removed some coins from Nopwasky's desk and returned to VDOT headquarters, discarding his weapon and bloody shirt along

3

the way. Although a customer discovered Nopwasky and summoned paramedics to the scene, efforts to revive her failed.

Mu'Min subsequently was charged with and convicted of one count of capital murder. Prior to the guilt phase of his trial, Mu'Min moved for a change of venue on the basis that pretrial publicity had rendered it impossible for him to receive a fair trial in Prince William County. The trial judge deferred action on the motion, with the agreement of defense counsel, pending an attempt to impanel an impartial jury. After succeeding in doing so, the trial court denied the motion. The court also denied Mu'Min's motion in limine to exclude or redact an order memorializing his 1973 conviction for first-degree murder, which the Commonwealth proposed to introduce to establish that Mu'Min had been incarcerated when he murdered Nopwasky.

During its sentencing-phase deliberations, the jury sent a note to the trial court asking, "[W]hat exactly is life imprisonment?" J.A. 634. The court responded, "I am sorry; I cannot answer that question. Neither should you be concerned about it." J.A. 635. Despite an invitation by the court for comments, Mu'Min's counsel did not object. The jury then imposed a sentence of death, finding that Mu'Min posed "a continuing serious threat to society" and that the murder of Nopwasky "was outrageously or wantonly vile, horrible, or inhuman." Va. Code Ann. § 19.2-264.2 (Michie 1995).

Mu'Min raised numerous arguments on direct appeal, including challenges to the admission of the 1973 order of conviction--on the basis that the prejudicial impact of this evidence outweighed its probative value--and to various aspects of the procedure employed in impaneling the jury. However, Mu'Min did not appeal the denial of his motion for a change of venue, the admission of the 1973 order of conviction on constitutional grounds, or the manner in which the trial court responded to the question by the jury regarding the meaning of "life imprisonment." The Supreme Court of Virginia upheld Mu'Min's conviction and sentence. See Mu'Min, 389 S.E.2d at 898. Thereafter, the United States Supreme Court granted certiorari to consider whether the trial court had erred in refusing to allow Mu'Min to question potential jurors regarding the content of pretrial publicity to which they had been exposed and concluded that it had not. See Mu'Min v. Virginia, 500 U.S. 415, 431-32 (1991).

4

Thereafter, Mu'Min sought postconviction relief in state court. A state habeas court conducted a hearing after which it denied relief, ruling that Mu'Min's claims--with the exception of his claims of ineffective assistance of counsel--either had been presented on direct appeal (and thus were not cognizable in a state habeas proceeding) or were procedurally defaulted due to his failure to raise them on direct appeal. The court further found that Mu'Min's claims of ineffective assistance of counsel were without merit. The Supreme Court of Virginia denied review, and the United States Supreme Court denied Mu'Min's petition for a writ of certiorari. See Mu'Min v. Murray, 511 U.S. 1026 (1994).

In October 1994, Mu'Min filed a petition for a writ of habeas corpus in the district court in which he argued, inter alia, that the Sixth and Fourteenth Amendment guarantees of a fair trial and due process were violated by the denial of his motion for a change of venue, the admission of the 1973 order of conviction, and the refusal of the trial court to inform the jury of his parole prospects. The magistrate judge to whom the petition was referred recommended dismissal on the basis that all of the claims raised by Mu'Min were either procedurally defaulted or lacked merit. Specifically, the magistrate judge determined that Mu'Min's challenges to the denial of the change of venue motion, the admission of the 1973 order of conviction, and the refusal to inform the jury of his parole prospects were procedurally defaulted because the Supreme Court of Virginia had refused to consider the issues on their merits citing the procedural default rule set forth in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that issues not properly raised at trial or on direct appeal will not be considered in habeas). Further, the magistrate judge ruled that Mu'Min had failed to excuse his state procedural default, and thus federal habeas review of these claims was foreclosed. After conducting a de novo review, the district court agreed with these conclusions and accordingly dismissed the petition.

II.

Mu'Min presents two arguments as to why his claims are not procedurally defaulted. First, he asserts that the procedural default rule set forth in Slayton does not preclude federal consideration of his claims because it is not independent of federal law. Second, he main-

5

tains that even if the Slayton rule constitutes an adequate and independent state-law basis for decision, his claims are not defaulted because they were implicitly considered and rejected by the Supreme Court of Virginia during the course of its mandatory review of his death sentence. We find neither of these contentions persuasive.

Absent cause and prejudice or a miscarriage of justice, a federal court sitting in habeas may not review a constitutional claim when a state court has declined to consider its merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

Mu'Min argues that the Virginia procedural default rule set forth in Slayton is not independent of federal law because it bars the assertion in state collateral review proceedings only of nonjurisdictional defects that could have been raised at trial or on direct appeal. See Slayton, 205 S.E.2d at 682. Mu'Min contends that since compliance with the mandates of the United States Constitution is a jurisdictional prerequisite to a valid conviction, the application of the Slayton procedural default rule by the Supreme Court of Virginia necessarily rested on an antecedent ruling of federal constitutional law, namely, that his conviction was not obtained in violation of the Constitution. See Ake, 470 U.S. at 74-75 (holding that an Oklahoma procedural default rule was not independent of federal law because application of the rule depended on a determination that no constitutional error had occurred during trial); Beam v. Paskett, 3 F.3d 1301, 1306-07 (9th Cir. 1993) (concluding that failure to present claim on direct appeal would not preclude consideration of it on habeas because state supreme court implicitly considered and rejected it during the course of its mandatory review of the death sentence, meaning that any default would not be independent of federal law). Based on this reasoning, Mu'Min would have us conclude that the determination of the Supreme Court of Virginia that his claims were procedurally defaulted under Slayton does not bar our consideration of them.

We have held on numerous occasions that the procedural default rule set forth in Slayton constitutes an adequate and independent state-

6

law ground for decision. <u>See, e.g.,</u> <u>Bennett v. Angelone</u>, 92 F.3d 1336, 1343 (4th Cir.), <u>cert. denied</u>, 117 S. Ct. 503 (1996); <u>Turner v. Williams</u>, 35 F.3d 872, 890 (4th Cir. 1994), <u>overruled in part on other grounds by O'Dell v. Netherland</u>, 95 F.3d 1214 (4th Cir. 1996) (en banc), <u>aff'd</u>, 117 S. Ct. 1969 (1997). Further, Mu'Min's analysis overlooks the critical point that Virginia courts regularly apply the <u>Slayton</u> default rule to federal constitutional claims that could have been, but were not, raised on direct appeal, demonstrating that Virginia does not construe its procedural default rule as Mu'Min asserts. <u>See, e.g.,</u> <u>Mueller v. Murray</u>, 478 S.E.2d 542, 549 (Va. 1996) (holding Eighth Amendment claim defaulted under the rule set forth in <u>Slayton</u>); <u>Peterson v. Bass</u>, 343 S.E.2d 475, 478 (Va. Ct. App. 1986) (ruling challenge pursuant to the Double Jeopardy Clause of the Fifth Amendment defaulted under the rule set forth in <u>Slayton</u>). Accordingly, we reject Mu'Min's argument that the procedural default rule set forth in <u>Slayton</u> does not bar consideration of his claims because it is not independent of federal law.

Mu'Min next contends that even if the procedural default rule set forth in <u>Slayton</u> bars consideration of claims not properly presented on direct review, his claims are not defaulted because the Supreme Court of Virginia implicitly considered and rejected them during the course of its mandatory review of his death sentence. <u>Cf. Beam</u>, 3 F.3d at 1306-07 (holding that habeas petitioner should not be required to show cause and prejudice to excuse default because the state supreme court implicitly rejected his claims during the course of its mandatory review of his death sentence). Pointing out that Virginia law requires review of a death sentence to determine "[w]hether [it] was imposed under the influence of passion, prejudice or any other arbitrary factor," Va. Code Ann. § 17-110.1(C)(1) (Michie 1996), Mu'Min claims that in performing its statutory duty the Supreme Court of Virginia necessarily determined that his conviction and sentence were free of fundamental constitutional error because such errors would constitute arbitrary factors requiring the invalidation of his death sentence. Mu'Min concludes that because the Supreme Court of Virginia considered the merits of his constitutional claims, we may do likewise.

We disagree. First, Mu'Min's reading of the statute is contradicted by the rulings of the Supreme Court of Virginia in this very case. In

7

refusing Mu'Min's petition for review of the denial of his state habeas petition, the Supreme Court of Virginia indicated its agreement with the determination of the habeas court that Mu'Min's failure to raise his claims on direct appeal resulted in their procedural default under the rule set forth in Slayton. Quite obviously, if Mu'Min were correct that in conducting its mandatory review of the death sentence the Supreme Court of Virginia had considered and rejected on their merits all possible constitutional challenges to his conviction and sentence, then in passing on his petition for review from the denial of his state habeas petition the Supreme Court of Virginia would not have applied the procedural default rule set forth in Slayton, but rather would have relied on the procedural bar rule set forth in Hawks v. Cox, 175 S.E.2d 271, 274 (Va. 1970) (precluding consideration in state habeas proceedings of claims considered on their merits during direct review). The fact that the Supreme Court of Virginia applied the rule in Slayton mandates the conclusion that the court did not implicitly consider the merits of Mu'Min's constitutional claims during the course of its mandatory review.

Moreover, in conducting its mandatory review of the death sentence pursuant to § 17-110.1(C)(1), the Supreme Court of Virginia ascertains only whether the imposition of the death penalty was influenced by improper considerations; the provision simply does not require the court to examine the record for constitutional errors not specified on appeal. See, e.g., Beck v. Commonwealth, 484 S.E.2d 898, 907 (Va. 1997) (holding that careful consideration of aggravating and mitigating factors by the finder of fact contradicted defendant's argument that the sentence of death was imposed as a result of arbitrary factors); Wilson v. Commonwealth, 452 S.E.2d 669, 675-76 (Va.) (reviewing record to determine whether the jury "was influenced by passion, prejudice, or any other arbitrary factor" in imposing the death penalty), cert. denied, 116 S. Ct. 127 (1995); cf. Kornahrens v. Evatt, 66 F.3d 1350, 1362-63 (4th Cir. 1995) (holding that South Carolina's practice of in favorem vitae review did not preserve otherwise defaulted claims), cert. denied, 116 S. Ct. 1575 (1996). See generally Bennett, 92 F.3d at 1345 n.6 (noting that "the spirit of Kornahrens is counter" to the notion that the Virginia mandatory review procedure preserves claims not explicitly raised); Nave v. Delo, 62 F.3d 1024, 1039 (8th Cir. 1995) (concluding that identical language of Missouri mandatory review provision does not preserve

8

defaulted constitutional claims), cert. denied, 116 S. Ct. 1837 (1996). Accordingly, the district court did not err in concluding that Mu'Min's claims were procedurally defaulted.**3**

III.

Mu'Min next argues that even if all of his claims are procedurally defaulted, we nevertheless may consider them on their merits because he has shown cause and prejudice to excuse his default. See Gray v. Netherland, 116 S. Ct. 2074, 2080 (1996).**4** Specifically, he maintains that his trial counsel was constitutionally ineffective for failing to pursue on direct appeal the claims he now wishes to press. See Murray v. Carrier, 477 U.S. 478, 488 (1986) (holding that constitutionally ineffective assistance of counsel may provide cause for a procedural default).

Mu'Min is constitutionally entitled to the effective assistance of counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396 (1985). Accordingly, he may establish cause to excuse his procedural default by satisfying the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Coleman v. Thompson, 501 U.S. 722, 752 (1991). Under Strickland, a defendant is deprived of the assistance of counsel guaranteed by the Constitution when counsel's performance falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694.

---

**3** With respect to his claim that the trial court improperly admitted into evidence the 1973 order of conviction, Mu'Min makes the additional argument that this claim is not defaulted because he presented the substance of it to the Supreme Court of Virginia on direct appeal, albeit as an evidentiary challenge rather than the due process claim he now pursues. However, it is well settled that "a habeas petitioner [who] wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment ... must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam).

**4** Mu'Min does not attempt to excuse his default on the basis of his actual factual innocence. See Schlup v. Delo, 513 U.S. 298, 314-17 (1995).

9

We begin our analysis of the alleged ineffectiveness of Mu'Min's counsel on direct appeal by noting that Mu'Min neglected to raise as a separate claim in the state habeas proceeding the ineffectiveness of appellate counsel for failing to appeal the admission of the 1973 order of conviction for first-degree murder as a violation of due process. Generally, "a claim of ineffective assistance[must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray, 477 U.S. at 489; see Pruett v. Thompson, 996 F.2d 1560, 1570 (4th Cir. 1993). This is so because allowing a petitioner to raise a claim of ineffective assistance of counsel for the first time on federal habeas review in order to show cause for a procedural default would place the federal habeas court "in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available" in contravention of "[t]he principle of comity that underlies the exhaustion doctrine." Murray, 477 U.S. at 489. Accordingly, Mu'Min's failure to argue in his state habeas petition that his appellate counsel was ineffective for not pursuing on appeal the claim that the trial court violated Mu'Min's due process rights by admitting the 1973 order of conviction precludes him from establishing cause on this basis. See Pruett, 996 F.2d at 1570.

Because Mu'Min properly asserted in state habeas proceedings the ineffectiveness of appellate counsel for failing to raise his other claims, we turn to consider whether these failures satisfy the Strickland cause and prejudice standard. Mu'Min first claims that his counsel was constitutionally ineffective for failing to appeal the decision of the trial court denying his motion for a change of venue based upon pretrial publicity. However, even if counsel was ineffective for failing to pursue an appeal on this issue, Mu'Min cannot show that he suffered prejudice. A change of venue is required as a matter of constitutional law only when the jury pool is tainted "by so huge a wave of public passion" that the impaneling of an impartial jury is impossible. Irvin v. Dowd, 366 U.S. 717, 728 (1961); see Mu'Min, 500 U.S. at 427-28. Here, as the Supreme Court noted in its consideration of Mu'Min's direct appeal, the pretrial publicity did not even approach this threshold. See Mu'Min, 500 U.S. at 429-30. At a minimum, then, Mu'Min cannot show prejudice because he cannot establish that an appeal of the denial of the motion for a change of venue

10

would have been successful. See Boliek v. Bowersox, 96 F.3d 1070, 1075 (8th Cir. 1996), cert. denied, 117 S. Ct. 2439 (1997).

Mu'Min also contends that appellate counsel was ineffective for failing to raise the refusal of the trial court to define "life imprisonment" upon a request by the jury on the basis that Mu'Min was constitutionally entitled to have such information provided to the jury. Mu'Min relies on Simmons v. South Carolina, 512 U.S. 154 (1994), in which the Supreme Court held that when "the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury--by either argument or instruction--that he is parole ineligible." Id. at 178 (O'Connor, J., concurring in the judgment); see Townes v. Murray, 68 F.3d 840, 849-50 (4th Cir. 1995) (recognizing Justice O'Connor's statement as setting forth the holding of the Court), cert. denied, 116 S. Ct. 831 (1996). Mu'Min asserts that the Simmons rule encompasses situations like the one before us, in which the defendant does not seek to argue that he is parole ineligible, but the jury of its own volition requests information regarding the defendant's parole prospects. We recently rejected precisely this argument under indistinguishable factual circumstances. See Townes, 68 F.3d at 847-50. Moreover, because Simmons constitutes a "new rule" under Teague v. Lane, 489 U.S. 288 (1989), it is not available to Mu'Min, whose conviction became final before Simmons was decided. See O'Dell v. Netherland, 95 F.3d 1214, 1218 (4th Cir. 1996) (en banc), aff'd, 117 S. Ct. 1969 (1997). And, any extension of Simmons along the lines sought by Mu'Min would also be a new rule. See Townes, 68 F.3d at 851-52. Furthermore, neither of the exceptions to the Teague doctrine--"for rules that `place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'" or for watershed rules of criminal procedure --applies to the rule Mu'Min seeks. Id. at 852 (quoting Teague, 489 U.S. at 307 (plurality opinion)). Accordingly, even if Mu'Min demonstrated cause and prejudice to excuse his default, he is not entitled to relief. See id. at 853.

IV.

We conclude that all of Mu'Min's claims are procedurally defaulted under Virginia law. Additionally, we determine that

11

Mu'Min has failed to show cause and prejudice or a miscarriage of justice to excuse his default of the claims that he was constitutionally entitled to a change of venue and that the admission of the 1973 order of conviction violated his right to due process. And, we hold that Mu'Min is not entitled to the benefit of a rule declaring that due process requires that a jury be informed of a capital defendant's parole prospects if it requests such information. Accordingly, we affirm the order of the district court dismissing the petition for a writ of habeas corpus.

AFFIRMED

12