**Ronald Lee FITZGERALD, Petitioner–Appellant,**

v.

**Fred W. GREENE, Warden, Mecklenburg Correctional Center, Respondent–Appellee.**

**No. 98–1.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1998.

Decided July 13, 1998.

---

**ARGUED:** Melissa Windham Friedman, Roanoke, Virginia, for Appellant. Pamela Anne Rumpz, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** David J. Damico, Damico & Apgar, Roanoke, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Appellee.

Before WIDENER, HAMILTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge:

On January 29, 1994, after a three-day trial, a Virginia jury found Ronald Lee Fitzgerald guilty of murdering Coy White during the commission of a robbery, murdering Hugh Morrison during the commission of a robbery, abducting and raping thirteen year-old Claudia White, abducting and raping Tiffany Lovelace, and breaking and entering into Coy White's residence. At the conclusion of the penalty phase of the trial, the jury recommended that Fitzgerald be sentenced to death for the murders of Coy White and Morrison due to his future dangerousness to the community and the vileness of the crimes. On May 10, 1994, the trial court imposed the death sentence.[1] After exhausting his state appeals, Fitzgerald petitioned the United States District Court for the Western District of Virginia for a writ of habeas corpus. The district court denied Fitzgerald's petition. Because Fitzgerald has failed to "ma[ke] a substantial showing of the denial of a constitutional right," we deny his application for a certificate of appealability and dismiss his appeal. 28 U.S.C.A. § 2253(c) (West Supp.1998).

I.

On January 29, 1993, at approximately 6:00 a.m., thirteen year-old Claudia White was awakened in her Chatham, Virginia, home by a noise. Claudia, who was in her bed, looked up and saw a man wearing a mask over his face, standing in her bedroom doorway and pointing a gun at her. The man directed Claudia to take off her clothes and be quiet. She refused, and the man removed Claudia's underpants and shirt. The man then removed the mask, and Claudia immediately recognized her assailant as Fitzgerald. She had seen Fitzgerald many times because he had dated her cousin, Amanda White. Fitzgerald took Claudia to another room and

---

[1.] Adopting the jury's recommendations, the trial court also sentenced Fitzgerald to life imprisonment for the two robberies and the abduction and rape of Claudia White; two forty-year sentences for the abduction and rape of Lovelace; and a thirty-year sentence for the breaking and entering conviction.

began to rub her chest. Shortly thereafter, Fitzgerald saw Coy White, Claudia's father, drive into the driveway. When White entered the front door, he saw Fitzgerald and demanded to know what he was doing with his daughter. Fitzgerald told White to get on the floor. As White was doing so, Fitzgerald shot him in the neck, severing White's spinal cord and killing him. Fitzgerald then pointed the gun at Claudia and ordered her to get her father's wallet and car keys. Claudia complied. Fitzgerald allowed Claudia to dress and then transported her in her father's car to a rural area where he raped her. Fitzgerald then gave Claudia his jacket and shirt and locked her in the trunk of the car. Claudia later escaped from the trunk, ran to a nearby house, and called the police.

Meanwhile, at approximately 7:45 a.m. the same morning, Fitzgerald hailed a taxicab driven by Hugh Morrison in which Kathryn Davis was a passenger. Davis testified that after she arrived at her destination, Morrison drove off with Fitzgerald. At about 10:00 a.m. that morning, Douglas Shelton discovered Morrison's body in a nearby creek.

Fitzgerald next appeared at Tiffany Lovelace's home driving a taxicab. Lovelace knew Fitzgerald because he was a friend of her boyfriend, Girard Younger. Fitzgerald told Lovelace that Younger was on his way to her home and that he wished to wait for him. After a while, however, Fitzgerald told Lovelace to go into one of the bedrooms in her home. He followed her into the bedroom and threatened her with the pistol he had concealed. He then directed her to take off her clothes. When she refused, he fired the gun into the floor by her feet. Lovelace questioned Fitzgerald why he was doing these things. He responded that it was because Younger had raped his girlfriend, Amanda White. Lovelace eventually removed her clothes and sat on the bed. Fitzgerald, however, then told her to put her clothes back on and to get into the taxicab. Lovelace refused to leave her children and insisted on taking them with her.

Fitzgerald took Lovelace and her children to a motel in Altavista, Virginia. They arrived at approximately 9:00 a.m. When Fitzgerald, Lovelace, and the children entered the motel room Fitzgerald had rented, Fitzgerald ordered Lovelace into the bathroom where he raped her. Around 11:45 a.m., they left the hotel room. Fitzgerald spotted Sonya and John Covington, guests of the motel, and asked them for a ride. The couple agreed and took Fitzgerald, Lovelace, and her children to Lovelace's home. Lovelace and the children got out of the car, but Fitzgerald asked the Covingtons to take him to the courthouse. When Fitzgerald and the Covingtons arrived at the courthouse, Fitzgerald pointed a gun into his mouth and pulled the trigger. The gun malfunctioned, however, and failed to fire. Sonya jumped out of the car, and John took the gun from Fitzgerald. Shortly thereafter, the police apprehended Fitzgerald.

On March 3, 1995, Fitzgerald's convictions and sentence were affirmed by the Supreme Court of Virginia. *See Fitzgerald v. Commonwealth,* 249 Va. 299, 455 S.E.2d 506 (1995), *cert. denied,* 516 U.S. 1179, 116 S.Ct. 1279, 134 L.Ed.2d 224 (1996). On May 13, 1996, Fitzgerald filed a state habeas action in the Supreme Court of Virginia. The Virginia Court summarily denied the petition without a hearing on October 16, 1996. The Pittsylvania County Circuit Court scheduled January 16, 1997, as Fitzgerald's execution date. The United States District Court for the Western District of Virginia granted a stay of execution and appointed counsel to assist Fitzgerald in filing his federal habeas petition. Fitzgerald filed his habeas petition on March 21, 1997. By order dated November 20, 1997, the district court denied Fitzgerald's motion for an evidentiary hearing and dismissed his petition. Fitzgerald now appeals to this Court.

## II.

On appeal, Fitzgerald raises four claims: (1) that he was denied a fair and impartial jury in violation of the Sixth and Fourteenth Amendments; (2) that the Commonwealth failed to provide exculpatory information as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, in violation of the Fourteenth Amendment; (3) that the trial court failed to instruct the jury that he was parole ineligible

in violation of the Eighth and Fourteenth Amendments; and (4) that he was denied effective assistance of counsel in violation of the Sixth Amendment.

■ Before we address Fitzgerald's claims, we must determine the applicable standards of review. Because Fitzgerald filed his federal habeas petition after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA's more deferential standards of review apply to his claims. The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp.1998). We recently interpreted subsection (1) to prohibit the issuance of the writ unless (a) the state court decision is in "square conflict" with Supreme Court precedent which is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* We now turn to the merits of Fitzgerald's claims.

## A.

Fitzgerald contends that James Bradshaw's presence on his jury deprived him of his constitutional right to a fair and impartial jury. Fitzgerald relies upon two bases for his claim. First, he asserts that Bradshaw's failure to disclose certain relevant information during voir dire denied him the opportunity to strike Bradshaw for cause. Second, Fitzgerald contends that even if Bradshaw's voir dire responses were truthful, Bradshaw's statement during sentencing deliberations that he had no sympathy for a rapist demonstrates his bias against Fitzgerald. For the reasons that follow, we decline to grant Fitzgerald relief.

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The Supreme Court has held that due process requires "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

■ In cases alleging juror dishonesty during voir dire, we apply the two-part test enunciated in *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), in determining whether the defendant is entitled to a new trial. In *McDonough*, the Court held

> that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

446 U.S. at 556, 100 S.Ct. 1870.

Failure to satisfy the requirements of *McDonough* does not end the court's inquiry, however, when the petitioner also asserts a general Sixth Amendment claim challenging

the partiality of a juror based upon additional circumstances occurring outside the voir dire. As Justice Blackmun emphasized in his concurrence in *McDonough,* "the Court's holding [did] not . . . foreclose the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury." *Id.* at 556, 104 S.Ct. 845 (Blackmun, J., concurring); *see also Coughlin v. Tailhook Ass'n,* 112 F.3d 1052, 1062 (9th Cir.1997); *Gonzales v. Thomas,* 99 F.3d 978, 985 (10th Cir.1996). Justice Blackmun explained that

> regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias, or in exceptional circumstances, that the facts are such that bias is to be inferred.

*McDonough,* 464 U.S. at 556–57, 104 S.Ct. 845 (Blackmun, J., concurring); *see Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (holding that "the remedy for allegations of jury partiality is a hearing in which the defendant has the opportunity to prove actual bias"); *cf. Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (holding that the defendant bears the burden of establishing juror partiality).

■ Turning to the specific facts of this case, we find that during voir dire, the trial court asked Bradshaw if "[he] or any member of [his] immediate family [had] been the victim of a rape, robbery, or abduction?" Bradshaw answered "no." (J.A. at 29–30.) The court later asked him if he knew of any reason that he could not give Fitzgerald a fair trial based solely upon the evidence presented and the law. Bradshaw agreed that

he could render a fair verdict. Bradshaw subsequently was seated on the jury.

At the conclusion of the guilt phase of the bifurcated trial, the jury voted to convict Fitzgerald of all charges, including the two capital murder charges. The penalty phase of the trial followed, after which the jury began its sentencing deliberations. The jury first unanimously agreed to recommend the death penalty for the two murder convictions and then began voting on all the other sentences. Upon arriving at the last conviction, the abduction and rape of Tiffany Lovelace, Bradshaw disclosed to the jury that he had no sympathy for rapists because his granddaughter had been molested as a child. He then made a motion that the jury impose a life sentence upon Fitzgerald for the rape of Tiffany Lovelace. The motion failed, however, and the jury imposed a forty-year sentence for the crime.

Some time after the jury announced its verdict and sentences but before the trial court imposed its sentence, the jury foreman reported the Bradshaw incident to the court. The trial court immediately conducted a post-trial hearing at which time both counsel and the court questioned Bradshaw regarding his partiality.[2] At the conclusion of the hearing, the trial court, satisfied that Fitzgerald suffered no prejudice from Bradshaw's presence on the jury, denied Fitzgerald's motion for a mistrial.

On direct appeal, Fitzgerald argued that he was denied an impartial jury because Bradshaw misled defense counsel when he deliberately failed to disclose that his granddaughter had been "touched in the wrong way" at the age of fourteen, thereby denying counsel the opportunity to strike him for cause. *See Fitzgerald v. Commonwealth,* 249 Va. 299, 455 S.E.2d 506, 511 (1995). The Virginia Supreme Court rejected Fitzgerald's

---

**2.** We acknowledge that the common-law rule disfavors "any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them. . . .'If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.' " *Stein v. New York,* 346 U.S. 156, 178, 73 S.Ct. 1077, 97 L.Ed. 1522

(1953) (quoting *McDonald v. Pless,* 238 U.S. 264, 267–268, 35 S.Ct. 783, 59 L.Ed. 1300 (1915)); *see also Tanner v. United States,* 483 U.S. 107, 119, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (noting the "[s]ubstantial policy considerations support[ing] the common-law rule against the admission of jury testimony to impeach a verdict"). Fitzgerald makes no argument on appeal, however, that he objected then or now to the trial court's questioning of the juror foreman or Juror Bradshaw.

claim. The court concluded that Bradshaw "testified truthfully during the voir dire. No one asked Bradshaw during voir dire whether his granddaughter had been molested. Rather, he was asked whether any member of his immediate family had been raped." *Id.* at 511–12.

Absent clear and convincing evidence to the contrary, we will presume the correctness of the state court's finding that Bradshaw's responses during voir dire were not only honest, but factually accurate. *See* 28 U.S.C.A. § 2254(e)(1). Because Fitzgerald has failed to present any evidence to the contrary, we will not disturb the state court's factual determination. As a result, Fitzgerald has failed to satisfy the *McDonough* test.[3]

■ To the extent that Fitzgerald asserts a general Sixth Amendment claim of juror

bias in addition to a *McDonough* claim based upon allegations of juror dishonesty, this claim is also without merit. "[T]he remedy for allegations of jury partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith,* 455 U.S. at 215, 102 S.Ct. 940. As noted above, that was precisely the procedure followed in this case. The trial court afforded Fitzgerald an unfettered opportunity to uncover any juror bias during a post-trial hearing. Bradshaw unequivocally stated, however, that his granddaughter's molestation had no effect on his voting to convict or sentence Fitzgerald for any of his crimes. (J.A. at 639–40.)

■ Apparently conceding that he failed to demonstrate actual bias during the post-trial hearing,[4] Fitzgerald urges this Court to

---

**3.** On appeal to this Court, Fitzgerald contends that even if Bradshaw's response to the voir dire question was truthful, the Virginia Supreme Court's conclusion that juror dishonesty during voir dire is a necessary predicate to a new trial is an erroneous interpretation of the Supreme Court's holding in *McDonough.* Fitzgerald posits that the correct interpretation of *McDonough* incorporates the concurring opinions to hold that a juror's dishonesty is not a necessary predicate to obtaining a new trial, but only a factor to be considered in determining whether actual bias occurred. *See McDonough,* 464 U.S. at 559, 104 S.Ct. 845 (Brennan, J., joined by Marshall, J., concurring in the judgment) ("One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the individual would be a biased juror in the particular case."); *id.* at 556–57, 104 S.Ct. 845 (Blackmun, J., joined by Stevens and O'Connor, JJ., concurring) (stating that "regardless of whether a juror's answer is honest or dishonest," the defendant may be entitled to a new trial if he "demonstrate[s] actual bias, or in exceptional circumstances, that the facts are such that bias is to be inferred."). While some circuits have adopted this interpretation of *McDonough, see, e.g., Zerka v. Green,* 49 F.3d 1181, 1186 n. 7 (6th Cir.1995) (counting votes in *McDonough* and concluding that a finding of dishonesty is not a prerequisite to relief); *Amirault v. Fair,* 968 F.2d 1404, 1405–06 (1st Cir.1992) (same), other circuits have ruled that juror dishonesty is a threshold requirement for relief under *McDonough, see, e.g., Dyer v. Calderon,* 122 F.3d 720, 727 & n. 1 (9th Cir.1997) (applying plurality opinion test and specifically rejecting petitioner's argument that juror's dishonesty is not a necessary predicate to obtaining a new trial), *reh'g granted* (October 9, 1997); *United States v. Wright,* 119

F.3d 630, 636 (8th Cir.1997) (*McDonough* analysis ends once court concludes there was no showing of dishonesty); *United States v. White,* 116 F.3d 903, 930 (D.C. 1997) (concluding that absent any evidence of juror dishonesty no further inquiry required under *McDonough* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 391, 139 L.Ed.2d 306 (1997); *Gonzales v. Thomas,* 99 F.3d 978, 984 (10th Cir.1996) (applying the plurality opinion in *McDonough* and holding that the party challenging the verdict must demonstrate that the juror in question "failed to answer honestly a material question"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1342, 137 L.Ed.2d 501 (1997); *Montoya v. Scott,* 65 F.3d 405, 418 n. 24 (5th Cir.1995) (applying plurality opinion in *McDonough* as test for juror bias); *United States v. Shaoul,* 41 F.3d 811, 815 (2nd Cir.1994) (holding that juror dishonesty is a threshold requirement of *McDonough* ). The Fourth Circuit has not had occasion to address this issue, and we need not resolve it now because Fitzgerald's claim fails under either proposed interpretation of *McDonough.* The only circumstance in which this distinction is relevant is when the prospective juror answers a question honestly, but incorrectly such that a "correct response would have provided a valid basis for a challenge for cause." *McDonough,* 464 U.S. at 556, 104 S.Ct. 845. When, as here, the prospective juror's answer was not just honest, but also "correct," the second part of the *McDonough* test necessarily is rendered moot.

**4.** In his brief, Fitzgerald requested an evidentiary hearing during which he could develop the factual basis for his actual bias claim. At oral argument, however, Fitzgerald agreed that he was unable to satisfy the AEDPA's requirements for obtaining an evidentiary hearing. The Act provides that the court shall not hold an evidentiary hearing on a claim unless the petitioner shows that

imply Brad shaw's bias based upon the record before us. *See Smith*, 455 U.S. at 221, 102 S.Ct. 940 (O'Connor, J., concurring) (asserting that "implied bias" also may provide a basis for relief under certain circumstances); *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936) ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law."). Assuming that implied bias remains a viable doctrine post-*Smith*, we decline to invoke it in this case. *Cf. Person v. Miller*, 854 F.2d 656, 664 (4th Cir.1988) (questioning the viability of the implied bias doctrine); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir.1990) (acknowledging that "[t]he Supreme Court has never explicitly adopted or rejected the doctrine of implied bias").

■ "[T]he doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person*, 854 F.2d at 664. As examples of the "exceptional" and "extraordinary" situations that might require a finding of implied bias, Justice O'Connor cited "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith*, 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring). This is not such an egregious situation. Neither Bradshaw nor anyone in his family was personally connected to any of the parties in this case. The circumstances of this case simply do not give rise to a presumption of bias.

■ Furthermore, even if we conclude that Bradshaw's presence on the jury was error, the principles of comity, federalism, and finality prevent us from overturning Fitzgerald's convictions and sentence, unless we are convinced that "the error 'had substantial and injurious effect or influence in determining the ... verdict,'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), or entertain grave doubt that it had such an effect, *see O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995) (holding that when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error" he should resolve the doubt in favor of the petitioner and grant relief). Following the Supreme Court's precedents, *see Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), this Court has repeatedly examined instances of juror misconduct and bias for harmlessness. *See Howard v. Moore*, 131 F.3d 399, 422 (4th Cir.1997) (en banc) (jury's exposure to ex parte communication from prosecutor's office found harmless when the communications were "nothing more than innocuous interventions" (internal citations and quotation marks omitted)), *petition for cert. filed* (U.S. May 22, 1998) (No. 97–9263); *United States v. Seeright*, 978 F.2d 842, 849–50 (4th Cir.1992) (juror's independent investigation of evidence did not require a mistrial when judge excused juror from further service and satisfied himself that other jurors were not affected); *Stockton v. Virginia*, 852 F.2d 740, 743–46 (4th Cir.1988) (jury's exposure to improper third-party contact examined to determine extent of prejudice); *United States v. Malloy*, 758 F.2d 979, 982–83 (4th Cir.1985) (juror's previous service at trial of co-defendant did not require a new trial); *Miller v. Harvey*, 566 F.2d 879, 881 (4th Cir.1977) (jury's improper experiment, in which one juror bit another to observe the resulting bruises, did

(A) the claim relies on—
   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West Supp.1998).

not violate due process and thus did not require granting a writ of habeas corpus). Thus, we must determine whether Bradshaw's presence on the jury had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710.

■ At the time of Bradshaw's statement, the jury had already voted to convict Fitzgerald on all counts and unanimously had agreed to recommend the death sentence for the murders of White and Morrison. In fact, the jury had agreed to all of Fitzgerald's sentences except the rape charge when Bradshaw stated that he had no sympathy for a rapist and recommended that Fitzgerald receive a life sentence for the rape of Tiffany Lovelace. The jury declined to adopt Bradshaw's recommendation and instead imposed a forty-year sentence for the crime. Also, during the post-trial hearing, Bradshaw stated unequivocally that his granddaughter's experience did not affect his voting to convict or sentence Fitzgerald. Based upon the foregoing circumstances, combined with the overwhelming evidence of Fitzgerald's guilt, his propensity for future dangerousness, and the vileness of his crimes, we are confident that Bradshaw's presence on the jury did not result in actual prejudice to Fitzgerald. *See Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (holding that an error does not have a substantial and injurious effect on a jury verdict unless "it resulted in 'actual prejudice'" to the habeas petitioner (quoting *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986))). Accordingly, Fitzgerald is not entitled to federal habeas relief.

### B.

■ Fitzgerald next maintains that the Commonwealth failed to provide exculpatory information as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. Specifically, Fitzgerald claims that the Commonwealth

failed to disclose that Girard Younger, who testified on behalf of the Commonwealth during both the guilt and sentencing phases, was a convicted felon working as an informant for the Commonwealth in other unrelated cases. Such evidence, he claims, could have been used effectively to impeach Younger.

■ On state habeas review, the Supreme Court of Virginia concluded that Fitzgerald could have raised this issue on direct appeal, but did not, and therefore dismissed the claim as procedurally defaulted under *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680, 682 (1974). "Under federal habeas law, we are not at liberty to question a state court's application of a state procedural rule because a state court's finding of procedural default is not reviewable if the finding is based upon an adequate and independent state ground." *Williams v. French,* 148 F.3d 203, 209 (4th Cir.1998) (citing *Harris,* 489 U.S. at 262, 109 S.Ct. 1038). A state procedural rule is adequate if it is regularly or consistently applied by the state court, *see Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The rule set forth in *Slayton* constitutes an adequate and independent state ground for the denial of habeas relief. *See, e.g., Mu'min v. Pruett,* 125 F.3d 192, 196 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 438, 139 L.Ed.2d 337 (1997); *Beaver v. Thompson,* 93 F.3d 1186, 1194 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 553, 136 L.Ed.2d 424 (1996). Therefore, absent cause and prejudice or a miscarriage of justice to excuse the procedural default, we may not review Fitzgerald's claim because the state court declined to consider its merits upon the basis of an adequate and independent state procedural rule. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).[5] Because Fitzgerald

---

5. Even if we could review the Virginia Supreme Court's application of *Slayton,* we would conclude that Fitzgerald's assertion that the Virginia Supreme Court ruled upon his claim on direct appeal had no merit. Logic dictates that if the Supreme Court of Virginia had considered and

rejected his Sixth Amendment claim on the merits, the court simply would have applied the procedural bar rule set forth in *Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271, 274 (1970) (precluding consideration in state habeas proceedings of claims considered on their merits during direct

does not attempt to establish cause and prejudice or actual innocence to excuse his default, we do not consider whether either exists. *See Gilbert v. Moore*, 134 F.3d 642, 656 n. 10 (4th Cir.1998) (en banc), *petition for cert. filed* (U.S. May 19, 1998) (Nos. 97–9198 & 97–9264).[6] Consequently, the district court correctly found Fitzgerald's claim defaulted.

### C.

■ Fitzgerald next contends that he was denied the opportunity to inform the jury regarding his ineligibility for parole in accordance with the Supreme Court's mandate in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

During the penalty phase of Fitzgerald's trial, defense counsel requested that the following instruction be given to the jury:

> The court instructs the jury that under Virginia Law any person convicted of three separate felony offenses of murder, rape or robbery by the presenting of firearms or other deadly weapon or any combination of the offenses of murder, rape or robbery when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

review), rather than the procedural default rule set forth in *Slayton*, in passing on his petition for state habeas review. That the Supreme Court of Virginia applied the rule in *Slayton* dictates the conclusion that the identical court did not believe that it had considered the merits of Fitzgerald's federal claim on direct appeal. *See Mu'min v. Pruett*, 125 F.3d 192, 197 (4th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 438 (1997).

**6.** To the extent that Fitzgerald's vague reference at the conclusion of his brief that any procedural defaults should be excused due to the ineffectiveness of his counsel could be construed as an argument for cause, we reject it. To overcome procedural default, Fitzgerald must show that his counsel's actions were constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This he cannot do. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires the Government to disclose all evidence favorable to the defense that is material to the outcome of a trial or sentencing proceeding. *Id.* at 87, 83 S.Ct. 1194. Undisclosed evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been differ-

(J.A. at 668.) The trial court denied the motion. In reliance upon *Simmons*, Fitzgerald challenged the trial court's denial on direct appeal. The Virginia Supreme Court rejected Fitzgerald's claim, concluding that (1) parole eligibility in Virginia is a question of law to be determined by the judge, not the jury, and (2) as a matter of law, Fitzgerald would have been eligible for parole because his crimes were part of a common act. *See Fitzgerald v. Commonwealth*, 249 Va. 299, 455 S.E.2d 506, 510 (1995). As a result, the Virginia Supreme Court found that *Simmons* was inapplicable to the case.

*Simmons* holds only that a state deprives a defendant in a capital case of due process if it "conceal[s] from the sentencing jury the true meaning of its noncapital sentencing alternative, namely, that life imprisonment mean[s] life without parole." 512 U.S. at 162, 114 S.Ct. 2187. Under Virginia law, however, "Fitzgerald was not parole ineligible" and so a life sentence would not have meant life without parole. *Fitzgerald*, 455 S.E.2d at 510.[7] Because the Virginia Supreme Court's decision was neither contrary to nor an unreasonable application of *Simmons*, we reject Fitzgerald's claim.

ent." *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks and citations omitted). Counsel was not deficient for failing to raise this issue on direct appeal because the alleged undisclosed evidence was not material. Considering the overwhelming evidence of Fitzgerald's guilt and defense counsel's effective cross-examination of Younger during the sentencing phase of the trial regarding his prior convictions and bias against Fitzgerald, we are confident that had the alleged evidence been disclosed to the defense, the result of the proceeding would *not* have been different.

**7.** Virginia law provides as follows:

> Any person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of the offenses specified in subdivisions (i), (ii) or (iii) when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

Va.Code Ann. § 53.1–151(B1) (Michie 1994). As noted, the Virginia Supreme Court held that Fitzgerald's crimes were part of a common transaction, rendering the above section inapplicable to Fitzgerald.

## D.

Finally, Fitzgerald asserts that his trial counsel was constitutionally ineffective for failing to request a competency hearing and for failing to fully investigate and present mitigating evidence during the sentencing phase of the trial. Fitzgerald also contends that he is entitled to relief because his appellate counsel failed "to raise valid issues on appeal." (Petitioner's Br. at 27.) On state habeas review, the Virginia Supreme Court dismissed all Fitzgerald's ineffectiveness claims for lack of merit. We conclude that the state court's decision was not an unreasonable application of the test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to the facts presented.

■ *Strickland* provides that a petitioner must demonstrate both that his trial counsel's representation was deficient and that he was prejudiced thereby. *See id.* at 687, 104 S.Ct. 2052; *Howard v. Moore*, 131 F.3d 399, 421 (4th Cir.1997) (en banc), *petition for cert. filed* (U.S. May 22, 1998) (No. 97–9263). In making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. In the context of challenging a death sentence, "the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. 2052.

### 1.

■ Fitzgerald claims that his trial counsel was deficient for failing to request a competency examination after learning that Fitzgerald was "experiencing suicidal ideation, delusional thought processes, and auditory hallucinations" before trial. (Petitioner's Br. at 24.) As the district court noted, however, on May 14, 1994, the trial court ordered that Fitzgerald be evaluated for competency and sanity at the time of the offense. This evaluation was performed by Dr. C. Robert Showalter. Subsequently, in July 1993, the court appointed Dr. Thomas V. Ryan, a clinical neuropsychologist, to evaluate Fitzgerald. Dr. Ryan reported that Fitzgerald was borderline mentally retarded, but that he understood the roles of the participants in the criminal trial process and was not insane. Nothing in either Dr. Showalter's or Dr. Ryan's reports suggested that Fitzgerald was not competent to stand trial. In his affidavit, trial counsel stated that he decided that requesting another competency examination would be futile in light of the existing reports and counsel's and the court's own experiences with Fitzgerald.[8] Counsel further testified that he found Fitzgerald to be helpful and cooperative and that Fitzgerald actively participated in his own defense, in particular during jury selection. Based upon the foregoing, we cannot say that counsel was deficient in failing to move for an independent competency evaluation.

### 2.

■ Fitzgerald further contends that trial counsel was constitutionally ineffective for failing to present mitigating witnesses during the sentencing phase of the trial. Specifically, Fitzgerald asserts that there was significant mitigating evidence demonstrating Fitzgerald's troubled mental state during his pretrial incarceration. While Fitzgerald fails to identify any witnesses to this Court or produce any affidavits from these purported witnesses, he apparently is referring to two individuals that allegedly reported him as delusional, suicidal, and hallucinatory while incarcerated. To the extent that we can review this claim, we hold that counsel's decision not to present these witnesses was reasonable. First, counsel was entitled to rely upon Dr. Ryan's assessment that Fitzgerald was sane and competent to stand trial and,

---

**8.** Trial counsel also had Fitzgerald examined by Dr. Della Williams, a neurosurgeon, to test for the presence of any organic brain injuries. She found no evidence of injury.

therefore, counsel's decision not to present additional witnesses was not unreasonable. Second, as the district court noted, counsel's strategy to focus their case on Fitzgerald's social and educational history, rather than his alleged mental problems in jail, was credible and, therefore, should not be second-guessed. *See Bunch v. Thompson,* 949 F.2d 1354, 1364 (4th Cir.1991) (recognizing that "[t]he best course for a federal habeas court is to credit plausible strategic judgments" when evaluating ineffectiveness claims).

### 3.

■ Fitzgerald also argues that his appellate counsel was ineffective for failing to brief a claim that Fitzgerald's sentence was excessive and disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Fitzgerald's attorneys stated in their brief that Fitzgerald "relies upon this Court's expertise in conducting the automatic review of the sentences of death imposed upon him which is required by Code § 17–110.1 of the Code of Virginia of 1950, as amended, and chooses to make no argument relative to this assignment of error." Appellant's Brief at 19, *Fitzgerald v. Commonwealth,* 249 Va. 299, 455 S.E.2d 506 (1995) (Nos. 94–1426 & 94–1586). The Virginia Supreme Court reviewed Fitzgerald's sentence as mandated by § 17–110.1(E) of the Virginia Code and affirmed it. *See Fitzgerald v. Commonwealth,* 249 Va. 299, 455 S.E.2d 506, 512 (1995).

■ Counsel's strategic decision to selectively brief and argue what, in his professional judgment, were Fitzgerald's strongest claims does not render counsel constitutionally deficient under *Strickland. See Griffin v. Aiken,* 775 F.2d 1226, 1235 (4th Cir.1985) (holding that "appellate counsel has no constitutional duty to raise every nonfrivolous issue on appeal if counsel, as a matter of professional judgment, decides not to raise such issue on appeal" (citing *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983))). Moreover, Fitzgerald cannot demonstrate that counsel's actions prejudiced him in any way. First, this Court refuses to give credence to Fitzgerald's suggestion that the Virginia Supreme Court conducted a less than thorough review of his case due to his attorneys' decision to rely upon the court's mandatory review, rather than fully brief the issue. Second, and more decidedly, the failure to conduct a proportionality review, if proven, would not entitle Fitzgerald to habeas relief. *See Buchanan v. Angelone,* 103 F.3d 344, 351 (4th Cir.1996), *cert. granted in part and aff'd,* — U.S. —, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998). As a result, we readily conclude that Fitzgerald was not prejudiced in any way by counsel's actions. In sum, we hold that the Virginia Supreme Court's dismissal of Fitzgerald's ineffective assistance of counsel claims was not an unreasonable application of the Supreme Court's rulings in *Strickland* and its progeny.

### III.

Finally, Fitzgerald contends that the district court abused its discretion when it denied his motion for an evidentiary hearing. He claims that he was entitled to an evidentiary hearing regarding his ineffective assistance of counsel claims because he never received an evidentiary hearing in state court. We disagree.

■ Fitzgerald is entitled to an evidentiary hearing "only if the state court fact-finding process was deficient in some significant respect." *Eaton v. Angelone,* 139 F.3d 990, 994 (4th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 2338, 141 L.Ed.2d 709 (1998) (No. 97–9170). In fact, "[e]videntiary hearings have never been required on federal collateral review of state petitioners' ineffectiveness claims." *Id.* at 995; *see also Spencer v. Murray,* 18 F.3d 229 (4th Cir.1994) (upholding denial of habeas corpus on basis of trial counsel's affidavit). Moreover, that the state habeas court dismissed Fitzgerald's claims based upon affidavits does not render the proceeding less than full and fair. *See Eaton,* 139 F.3d at 995. Accordingly, we uphold the district court's denial of an evidentiary hearing.

### IV.

In conclusion, we hold that Fitzgerald has failed to "ma[ke] a substantial showing of the denial of a constitutional right." 28 U.S.C.A.

§ 2253(c) (West Supp.1998). Consequently, we deny his motion for a certificate of appealability and dismiss his petition.

*DISMISSED.*