**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BOBBY LEE HARRIS,
Petitioner-Appellant,

v.

No. 98-34

JAMES FRENCH, Warden, Central
Prison, Raleigh, North Carolina,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-542-5-HC-BR)

Argued: June 8, 1999

Decided: July 14, 1999

Before ERVIN, HAMILTON, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Kanin Shatz, Durham, North Carolina, for Appel-
lant. Edwin William Welch, Special Deputy Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Mark E. Edwards, Durham,
North Carolina, for Appellant. Michael F. Easley, Attorney General
of North Carolina, NORTH CAROLINA DEPARTMENT OF JUS-
TICE, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In 1992, following a trial by jury in North Carolina superior court, Bobby Lee Harris was convicted of first-degree murder, robbery with a dangerous weapon, second-degree burglary, larceny, and possession of a stolen weapon. Harris was sentenced to death for his murder conviction and sentenced to 100 years imprisonment for the remaining convictions. In 1994, Harris appealed his murder conviction and death sentence to the North Carolina Supreme Court as a matter of right. The North Carolina Supreme Court affirmed his conviction and sentence in a published opinion. See State v. Harris, 449 S.E.2d 371 (N.C. 1994). The United States Supreme Court denied certiorari on May 1, 1995. See Harris v. North Carolina, 514 U.S. 1100 (1995). Harris then sought post-conviction relief in the state courts of North Carolina by initiating a motion for appropriate relief (MAR) in 1996. The state superior court denied the MAR, and the North Carolina Supreme Court denied Harris's subsequent petition for a writ of certiorari. Then, in 1997, Harris filed a habeas petition in the United States District Court for the Eastern District of North Carolina. See 28 U.S.C.A. § 2254 (West Supp. 1999). The State of North Carolina**1** responded by filing a motion for summary judgment, which the district court granted and dismissed the petition. Harris now appeals the district court's judgment to this Court.

On appeal, Harris presents five issues: (1) whether the district court erred in refusing to consider affidavits offered in support of the habeas petition; (2) whether the district court erred in not allowing an evidentiary hearing on claims of ineffective-assistance-of-trial-counsel; (3) whether the district court erred in not allowing an eviden-

_____

**1** Harris named James French, Warden of the Central Prison, Raleigh, North Carolina, where Harris is incarcerated, as Respondent. For ease of reference we refer to French as "the State" or "North Carolina."

2

tiary hearing on claims of ineffective assistance of appellate counsel; (4) whether the district court erred in determining that the state courts' denial of Harris's motion to suppress his confession constituted a reasonable application of Supreme Court precedent; and (5) whether the district court erred in treating several issues not raised on direct appeal as procedurally defaulted. For the reasons that follow, we affirm.

I.

We take the undisputed facts of this case from the decision of the North Carolina Supreme Court in State v. Harris , 449 S.E.2d 371, 373-74 (N.C. 1994):

> The evidence at trial tended to show that the defendant, Bobby Lee Harris, and Joe Simpson were employed by the victim, John Redd, in his fishing business. For several days, the defendant and Simpson discussed the possibility of stealing the victim's truck and driving to Georgia. On the night of 20 August 1991, the three men went fishing around 11:00 p.m. According to the defendant's confession, the plan was for the defendant to restrain Redd while Simpson bound him. They were then going to rob him and leave him on the shore. The defendant, Simpson, and Redd had been drinking during the evening and for whatever reason (the defendant blamed Redd's "griping"), the defendant stabbed Redd with Redd's knife rather than merely restraining him. Redd was robbed of his wallet containing approximately $80.00 and of his keys, then was either thrown from the boat or placed on a pile of oyster shells. Shortly after dumping Redd, and as the defendant and Simpson were returning to the dock around 2:30 a.m., they were stopped by a game warden and cited for traveling without running lights. After returning the boat to its dock, the defendant and Simpson took the victim's truck, drove to the victim's house, used the victim's keys and entered the house. They searched for and found the victim's .12-gauge shotgun and a .22 pistol, both of which they took. Taking some beer from the house, the two men left the house and drove to Georgia. The defendant and

3

Simpson surrendered to Georgia authorities on 23 August 1991 after learning of Redd's death.

The victim was stabbed three times in the back. He was found on a pile of oyster shells along Bear's Inlet around 6:15 a.m. He was transported to the Naval Hospital at Camp Lejeune and died on the operating table around noon, but not before identifying the defendant and Simpson as his assailants. The cause of death was exsanguination, bleeding to death. The victim's blood alcohol level was the equivalent of .263 on the breathalyzer test.

. . . .

[Harris] and Joe Simpson surrendered to the sheriff's department of Haralson County, Georgia. Lt. Mack Whitney of the Onslow County Sheriff's Department and three other law enforcement officers went to Haralson County, Georgia, to return the two men to North Carolina. On the morning of 27 August 1991, Lt. Whitney met the defendant at the Haralson County Jail. Lt. Whitney fully advised the defendant of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant said he wanted an attorney and no interrogation of the defendant was had at that time. The defendant signed a form acknowledging that he had been fully advised of and understood his rights. The defendant volunteered the information that Mr. Redd's shotgun was at the home of Joe Simpson's grandmother with whom the two men had been staying while they were in Georgia. Lt. Whitney retrieved the shotgun and returned it to North Carolina.

Lt. Whitney and an SBI agent brought the defendant and Joe Simpson back to Jacksonville and put them in the Onslow County Jail on the evening of 27 August 1991. During the evening, Sheriff Brown allowed the defendant's brother to visit the defendant. The defendant's brother then came to the sheriff's office and told the sheriff that the defendant wanted to talk to him.

4

The sheriff had the defendant brought to his office at approximately 11:20 p.m. on 27 August 1991. Those present in the office with the sheriff and the defendant were Lt. Whitney, the defendant's brother and his brother's wife. A cassette tape was used to record the conference. The sheriff began the conference by asking the defendant whether he wanted to come and talk to him in regard to what had happened and the defendant answered that he wanted to do so. The defendant started to make a statement and Sheriff Brown then interrupted him and again advised him of his rights under Miranda except he did not advise him that he could stop answering questions at any time. The sheriff also did not ask the defendant, "[d]o you want a lawyer now?" The defendant then made an incriminating statement.

On May 14, 1992, an Onslow County, North Carolina superior court jury convicted Bobby Lee Harris of first-degree murder, robbery with a dangerous weapon, second-degree burglary, larceny, and possession of a stolen weapon. Prior to the sentencing phase of the trial, Harris's lead trial counsel, Timothy E. Merritt, was allowed to withdraw after being diagnosed with terminal bone marrow cancer. He was soon replaced by a new lead counsel, Charles H. Henry. See Harris, 449 S.E.2d at 376. The assisting defense counsel, Charles K. Medlin, continued representing Harris. On July 2, 1992, before the sentencing hearing took place, Medlin filed a motion for appropriate relief (1992 MAR) in the superior court on Harris's behalf arguing that Merritt's medical condition had prevented him from effectively representing Harris during the guilt phase of the trial. The superior court judge denied the 1992 MAR on July 10, 1992.

Because of the delay caused by the withdrawal and replacement of Merritt, the sentencing proceedings did not begin until July 13, 1992. Rather than retain the guilt-phase jury for sentencing, the superior court empaneled a new jury. After deliberating, the jury recommended that Harris be sentenced to death. The trial judge followed the jury's recommendation and sentenced Harris to death for first-degree murder and 100 years for the other offenses. Pursuant to N.C. Gen. Stat. § 7A-27(a) (Michie 1995), Harris appealed the first-degree murder conviction and death sentence to the North Carolina Supreme Court as a matter of right.

5

On November 3, 1994, the North Carolina Supreme Court affirmed Harris's death sentence. See Harris, 449 S.E.2d at 388. The North Carolina Supreme Court also affirmed the superior court's denial of Harris's 1992 MAR, but noted that Harris could make another motion for appropriate relief under N.C. Gen. Stat. § 15A-1415 (Michie 1997), and present any additional evidence of ineffective assistance of counsel therein. See Harris, 449 S.E.2d at 375-77.

The superior court appointed new counsel to represent Harris in his post-conviction proceedings. On January 16, 1996, Harris's newly appointed counsel filed a second MAR (1996 MAR) in the superior court, which was denied without a hearing on July 8, 1996. Harris then filed a petition for a writ of certiorari with the North Carolina Supreme Court asking for a review of the superior court's denial. The North Carolina Supreme Court denied the writ of certiorari on March 26, 1997. See State v. Harris, 483 S.E.2d 714 (N.C. 1997).

Harris next filed a writ of habeas corpus in the United States District Court for the Eastern District of North Carolina on July 11, 1997. In his federal habeas petition, Harris made fifteen different claims. Harris's claims included, inter alia, that his Confrontation Clause right was violated, that he was denied his Sixth Amendment right to effective assistance of counsel both at trial and on appeal, that his Fifth Amendment right to counsel was violated, and that he was denied a fair and impartial jury in violation of the Sixth Amendment. The district court granted summary judgment to the State and dismissed the petition, finding that several claims were procedurally defaulted and that the remaining questions did not merit relief. After the district court granted the State's motion for summary judgment, Harris filed a motion in the district court to alter judgment under Federal Rule of Civil Procedure 59(e), claiming that the district court improperly held several of Harris's claims as procedurally defaulted. The district court denied the motion to alter judgment on November 3, 1998. Harris then filed a notice of appeal with this Court and received a certificate of appealability from the district court.

On appeal, Harris presents five issues: (1) whether the district court erred in refusing to consider affidavits offered in support of the habeas petition; (2) whether the district court erred in not allowing an evidentiary hearing on claims of ineffective assistance of trial coun-

sel; (3) whether the district court erred in not allowing an evidentiary hearing on claims of ineffective assistance of appellate counsel; (4) whether the district court erred in determining that the state courts' denial of Harris's motion to suppress his confession constituted a reasonable application of Supreme Court precedent; and (5) whether the district court erred in treating several issues not raised on direct appeal as procedurally defaulted.

II.

Before we address Harris's claims, we must delineate the applicable standards of review for legal questions addressed by the state courts. Because Harris filed his federal habeas petition after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA's deferential standards of review apply to the claims already adjudicated on the merits by the state courts.[2] The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 1999). We recently interpreted subsection (1) to prohibit the issuance of the writ unless (a) the state court decision is in "square conflict" with Supreme Court precedent

_____

**2** The writ was filed on July 11, 1997, after April 26, 1996, the effective date of the AEDPA. See Lindh v. Murphy, 117 S. Ct. 2059 (1997).

which is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." Green v. French, 143 F.3d 865, 870 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." Id. We now turn to the merits of Harris's claims.

A.

Harris first claims that the federal district court erred by refusing to consider affidavits filed in support of his habeas petition. At issue are two affidavits, one from the lawyer representing Harris at trial and on appeal, Charles Medlin, and one from Harris himself. These affidavits were not submitted to the state courts in either the 1992 MAR or the 1996 MAR. Instead, they were prepared in anticipation of the federal habeas proceeding and submitted with the petition. The federal district court refused to consider the affidavits because they "were never submitted on the State level" and "cannot now be considered." (J.A. at 539.)

This Court recently addressed the question of when a federal habeas court may consider additional evidence that was not presented in a state collateral relief proceeding. In Wilson v. Moore, 1999 WL 330282 (4th Cir. May 25, 1999), we noted that "a federal habeas applicant must develop the factual basis for a claim in state court to `accommodate concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum.'" Id. at *4 (quoting Keeney v. Tamayo-Reyes , 504 U.S. 1, 8 (1992)). In order to preserve these ends, we treat the unexcused omission of evidentiary materials in state court proceedings in the same manner that we treat the unexcused omission of claims in state court proceedings -- we apply the doctrine of procedural default. See Wilson, 1999 WL 330282 at *4.

Under the doctrine of procedural default, a federal court may not consider the merits of claims on federal habeas review if they were

8

defaulted under an independent and adequate state procedural rule applied by the state courts unless the prisoner can demonstrate cause for the default and prejudice resulting therefrom, or can demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 731-32, 750 (1991). A state rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

In Harris's 1996 MAR proceeding, the superior court dismissed Harris's allegations of ineffective assistance of counsel at both the sentencing and guilt phase of his trial because they were not supported by evidence as required by N.C. Gen. Stat.§ 15A 1420(b)(1) (Michie 1997).[3] The superior court thus asserted a state procedural rule barring consideration of the claim for failure to introduce statutorily required evidence. Harris argues that § 15A-1420(b)(1) was not an adequate[4] rule under the doctrine of procedural default because other North Carolina courts have routinely allowed a verified MAR to serve as sufficient evidence under § 15A-1420(b)(1).

At the outset, we note that the affidavits in question were never presented in the state courts -- the state jurists never had an opportunity to accept or reject them. And, as we explain, we simply do not accept the notion that a verified MAR is interchangeable with an affidavit in this context.[5] North Carolina law compels this position. In

_____

[3] Section 15A-1420(b)(1) reads as follows:

> A motion for appropriate relief made after the entry of judgment must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcript of the case or which are not within the knowledge of the judge who hears the motion.

N.C. Gen. Stat. § 15A-1420(b)(1) (Michie 1997).
[4] Harris does not contend that N.C. Gen. Stat. § 15A-1420(b)(1) depends upon a federal constitutional ruling, resulting in a lack of independence.
[5] We note Harris's citation of Schoolfield v. Collins, 189 S.E.2d 208, 213 (N.C. 1972), which stated that verified pleadings could be treated as

9

rejecting certain of Harris's claims, the superior court relied upon N.C. Gen. Stat. § 15A-1420(b)(1), which requires that a MAR be supported by an affidavit or other documentary evidence if it relies upon facts outside of the record or the knowledge of the court. See N.C. Gen. Stat. § 15A-1420(b)(1). Two North Carolina cases have made it clear that mere allegations lacking independent support are insufficient to sustain a MAR under § 15A-1420(b)(1). See State v. Payne, 325 S.E.2d 205, 219 (N.C. 1985); State v. Ware , 482 S.E.2d 14, 16 (N.C. App. 1997). The contents of MARs and independent supporting affidavits are not treated as interchangeable by the state courts in the context of § 15A-1420(b)(1).**6** Based upon this analysis, we conclude

_____

an affidavit. The simple distinction between the present case and Schoolfield is that in the latter case the North Carolina Supreme Court was interpreting a different procedural rule under North Carolina law that specifically allowed pleadings as well as affidavits to suffice as support for material facts. See id. Furthermore, the North Carolina Supreme Court emphasized the fact that all of the factual assertions in the pleading at issue were within the personal knowledge of the person verifying the pleading. See id. It is certainly within the purview of the state courts to interpret individual state statutes and procedural rules as they see fit and, as we explain in the text that follows, we believe that the state courts have not treated affidavits and verified pleadings interchangeably in the context of N.C. Gen. Stat. § 15A-1420(b)(1) (Michie 1997).

**6** Harris presents two cases from North Carolina to support his argument that the state courts, as a matter of course, accept verified MARs as sufficient to satisfy the requirements of N.C. Gen. Stat. § 15A-1420(b)(1) (Michie 1999). After reviewing these cases, we do not agree. In State v. Taylor, 393 S.E.2d 801 (N.C. 1990), petitioner presented his ineffective-assistance-of-appellate-counsel claims in a MAR, but the petitioner's previous lawyer claimed attorney-client privilege to protect other documentary evidence, thus effectively preventing the presentation of affidavits or other documentary evidence. Taylor presented unusual circumstances not present in this case. In the second case cited by Harris, State v. McDowell, 310 S.E.2d 301 (N.C. 1984), it is not clear exactly what evidence was presented in the MAR or whether any additional evidence outside of the factual record was necessary to decide the question. Because of an allegation of newly discovered evidence, the trial court did, however, allow an evidentiary hearing, which provided support for the claims. Neither of these cases squarely addressed the issue of what evidence is required under § 15A-1420(b)(1). Moreover, even if we

10

that the refusal to consider facts contained in the 1996 MAR was supported by a consistent application of § 15A-1420(b)(1). The state procedural rule is therefore adequate.

Having concluded that the evidence presented to the federal habeas court was not submitted to the state courts, and thus the state courts declined review on the merits, we must now determine whether a fundamental miscarriage of justice or cause and prejudice excuse the omission. "Cause exists . . . where the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." Roach v. Angelone, 1999 WL 270014, *10 (4th Cir. May 4, 1999). Harris makes no argument that he could not have obtained the affidavits prior to his state MAR proceeding, and the reason is apparent: he and his former counsel were the affiants. Furthermore, Harris makes no argument that failing to consider the affidavits would result in a fundamental miscarriage of justice. Accordingly, we conclude that the district court properly refused to consider the supporting affidavits.

B.

Harris next contends that he "was entitled to an evidentiary hearing on his claims of ineffective assistance of counsel at trial." (Appellant's Br. at 2.) According to Harris, the district court should have embarked upon a factual investigation of his trial counsels' performance because his federal habeas petition made sufficient allegations of substandard performance that resulted in prejudice, thus satisfying the standard for constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Specifically, Harris contends that his trial counsel provided ineffective assistance for the following reasons: (1) counsels' trial strategy was doomed to fail as a matter of North Carolina law; (2) counsel ineptly examined the victim's treating physician; (3) counsel failed to object to the

_____

believed that the state courts had allowed exceptions to § 15A-1420(b)(1), we have held that state courts need not show an unwavering adherence to a state procedural rule to demonstrate that it is firmly established. Cf. Weeks v. Angelone, 1999 WL 288504 at *19 (4th Cir. May 10, 1999).

11

admission of a dying declaration; and (4) counsel failed to properly utilize a psychological expert.

Due to concerns about comity and federalism, it is well-established that a habeas petitioner is entitled to an evidentiary hearing only if the fact-finding process in the state courts was significantly deficient through no fault of the habeas petitioner. See, e.g., Keeney v. Tamayo-Reyes, 504 U.S. 1, 5-9 (1992); Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled in part by Tamayo-Reyes, 504 U.S. at 5-9; Fitzgerald v. Greene, 150 F.3d 357, 369 (4th Cir. 1998); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 20.2b at 742 (3d ed. 1998). The AEDPA restricts a federal court from holding an evidentiary hearing in the following circumstances:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
>  (A) the claim relies on--
>
>  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West Supp. 1999). We have interpreted "failed" to mean an omission on the part of a habeas petitioner. See Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir.), cert. denied, 119 S. Ct. 587 (1998). Thus, if a state court refuses to allow factual devel-

12

opment of a claim despite the diligent efforts of a habeas petitioner, we will not consider it a failure on the part of the petitioner and will not preclude an evidentiary hearing based upon § 2254(e)(2). See id. at 337.

As an initial matter, we find unpersuasive Harris's incorporation of his argument in part A. of this opinion. In an attempt to fend off the application of § 2254(e), Harris contends that the state courts improperly disregarded the substance of his allegations in the 1996 MAR application, resulting in a refusal by the state courts to allow factual development. The superior court's behavior, however, does not demonstrate a deficiency in the state court fact-finding process or a refusal by the state to allow the development of the factual record. The superior court simply followed precedent previously established by the North Carolina Supreme Court in finding the verified MAR insufficient. See Payne, 325 S.E.2d at 219. We will not eviscerate state court fact finding by arbitrarily reopening matters upon federal habeas review. See Wainwright v. Sykes, 433 U.S. 72, 90 (1977) (noting that federal courts must protect "the state trial on the merits [as] the `main event,' so to speak, rather than a `tryout on the road' for what will later be a determinative federal habeas hearing"). Harris's argument does not defeat the application of § 2254(e).

We now address the merits of Harris's request for an evidentiary hearing. Because our reasoning regarding the alleged deficiency in trial strategy and the handling of the psychological expert differs somewhat from our reasoning regarding the examination of the victim's treating physician and the failure to object to the dying declaration, we will analyze the appropriateness of an evidentiary hearing on these issues in two parts.

1.

In Harris's 1992 MAR, which was reviewed by the North Carolina Supreme Court on direct appeal, he argued that his trial counsel was ineffective because the trial strategy was fundamentally flawed and counsel failed to make appropriate use of a psychological expert. See Harris, 449 S.E.2d at 376-77. Harris attributed these shortcomings to the lack of cooperation between, and inattention of, trial counsel. The superior court denied the 1992 MAR as did the North Carolina

13

Supreme Court. See id. Harris also made other claims of ineffective assistance of counsel, but failed to support them with any evidence. See id. In its decision denying the claims, the North Carolina Supreme Court stated that Harris could make claims of ineffectiveness of counsel in a subsequent MAR and submit evidence. See id. Harris's post-conviction counsel followed at least part of this advice.

In his 1996 MAR, Harris again argued, as he does to this Court, that his trial counsel were ineffective, at least in part, because of poor cooperation and planning, which had a particularly adverse affect on trial strategy and the use of a psychological expert retained by the defense. The out-of-court activities of Harris's trial counsel are not readily ascertainable from trial records and, under North Carolina law, the allegations must be supported by documentary evidence such as an affidavit. See N.C. Gen. Stat. § 15A-1420(b)(1) ("A motion for appropriate relief made after the entry of judgment must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcript of the case or which are not within the knowledge of the judge who hears the motion."). In its order denying the 1996 MAR, the superior court noted that Harris "had not presented any additional evidence supported by affidavit which would demonstrate ineffective assistance of [trial] counsel." (J.A. at 166 (internal quotation marks omitted).) In other words, Harris had not presented supporting evidence as the North Carolina Supreme Court suggested on direct appeal or as required by statute.

Because Harris did not submit the necessary factual support for these claims to the state courts, we find that he failed "to develop the factual basis of a claim in State court proceedings."[7] 28 U.S.C.A. § 2254(e)(2). Therefore, a federal court may not entertain an evidentiary hearing on these matters unless Harris can establish (1) either that the claim relies on a new rule of constitutional law retroactively applied or that the claim relies on facts that could not have been discovered through due diligence, and (2) that the underlying facts are sufficient to establish by clear and convincing evidence that absent

_____

[7] If the facts had been fully developed in the state court, then there would, of course, be no reason to hold an evidentiary hearing at the district court.

14

constitutional error, no reasonable fact finder would have found the petitioner guilty. See 28 U.S.C.A. § 2254(e)(2). Harris's claim does not meet these criteria.

First, Harris argues no new rule of constitutional law. Second, the facts presented to support the claims of ineffective assistance of trial counsel were within the personal knowledge of both Harris and one of his trial counsel and thus readily available upon an exercise of due diligence at the time of his 1996 MAR. Because Harris failed to develop the factual record in state court and the circumstances do not fall within the narrow exceptions allowed by § 2254(e)(2), the district court was prohibited from holding an evidentiary hearing on these issues.

2.

The remaining ineffective-assistance-of-trial-counsel claims lodged by Harris also do not merit an evidentiary hearing, but for slightly different reasons. Unlike the claims discussed in part B.1., trial counsel's performance during the examination of the victim's treating physician and during the introduction of the victim's dying declaration are matters of record. Therefore, under § 15A-1420(b)(1), the claims need not be supported by affidavit or other documentary evidence. See N.C. Gen. Stat. 15A-1420(b)(1) (stating that other evidence need be presented only if facts "are not ascertainable from the records or any transcript of the case"). The claims were fully developed in the state courts and § 2254(e) is not implicated.

Although § 2254(e) does not prohibit an evidentiary hearing, Harris is still not entitled to an evidentiary hearing unless he can show that the fact-finding process in the state courts was significantly deficient through no fault of the habeas petitioner. See, e.g., Fitzgerald, 150 F.3d at 369 (stating that a habeas petitioner is"entitled to an evidentiary hearing only if the state court fact-finding process was deficient in some significant respect" (internal quotation marks omitted)). As to these ineffective-assistance-of-counsel claims, Harris makes no such suggestion, nor does he allege that any extra-record facts would bolster his claims. Because Harris fails to make a showing that he is entitled to an evidentiary hearing on these claims, we conclude that the district court properly refused to grant one.

15

In sum, the district court properly denied Harris's request for an evidentiary hearing. Under § 2254(e)(2), we are prohibited from allowing an evidentiary hearing in federal court to flesh out previously available factual support for habeas claims when Harris failed to do so in the state courts. Moreover, Harris is not entitled to an evidentiary hearing on his factually developed ineffective-assistance-of-counsel claims because he failed to show a significant deficiency in the state court fact-finding process.[8]

C.

Harris next contends that he "was entitled to an evidentiary hearing on his claims of ineffective assistance on direct appeal." (Appellant's Br. at 2.) Underlying this request is Harris's contention that his state appellate counsel were ineffective because they failed to raise meritorious issues on appeal. Harris specifically asserts that the following issues should have been raised: (1) Harris was unable to confront the victim's treating doctor during the doctor's testimony in violation of Harris's rights under the United States and North Carolina constitutions; (2) Harris was subjected to double jeopardy in violation of the United States Constitution and North Carolina law because the guilt-phase jury was dismissed and a new jury empaneled for the sentencing phase; (3) Harris's trial counsel admitted Harris's guilt without Harris's authorization in violation of his rights under North Carolina law; and (4) Harris's right under the United States Constitution to a fair and impartial jury was violated by the service of the superior court judge's secretary on the trial jury. Here again, Harris requests only that we grant an evidentiary hearing to provide a forum to establish the factual basis for his claims. Accordingly, we turn to the relevant standards for the grant of an evidentiary hearing.

As we explained in part B., a habeas petitioner is entitled to an evidentiary hearing only if the fact-finding process in the state courts

_____

[8] Harris's only request for relief on this issue is an evidentiary hearing by the district court. Even if we were to construe Harris's brief to request a substantive review of his claims of ineffective assistance of trial counsel and ignore any procedural infirmities, we would agree with the opinion of the district court, which held that the substance of Harris's ineffective-assistance-of-trial-counsel claims did not merit relief.

16

was significantly deficient through no fault of the habeas petitioner. See, e.g., Keeney v. Tamayo-Reyes, 504 U.S. 1, 4-9 (1992); Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled in part by Tamayo-Reyes, 504 U.S. at 4-9; Fitzgerald v. Greene , 150 F.3d 357, 369 (4th Cir. 1998); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 20.2b at 742 (3d ed. 1998). As we noted in part B., the AEDPA restricts a federal court from holding an evidentiary hearing if the petitioner has failed to develop the factual basis of a claim in the state courts unless: (1) the claim is based on a new rule of constitutional law retroactively applicable or relies on facts not available through an exercise of diligence; and (2) the facts provide clear and convincing evidence that the petitioner would not have been found guilty absent constitutional error. See 28 U.S.C.A. § 2254(e)(2). Again, we have interpreted "failed" to mean an omission on the part of a habeas petitioner, and thus if a state court refuses to allow factual development despite the diligent efforts of a habeas petitioner, then we will not consider it a failure on the part of the petitioner, and we will not preclude an evidentiary hearing based upon § 2254(e)(2). See Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir.), cert. denied, 119 S. Ct. 587 (1998).

In the circumstances presented by this appeal, we find no merit in Harris's request for an evidentiary hearing. Harris does not argue that there was any significant deficiency in the state courts' fact-finding process and does not contend that the state courts refused to allow him to develop the record. Furthermore, Harris points to no facts outside of the record that even would benefit from further factual investigation by a federal habeas court. Finally, the claims before the district court were fully presented, and we have never held that a federal habeas court is required to hold an evidentiary hearing on such ineffective-assistance-of-appellate-counsel claims. See Eaton v. Angelone, 139 F.3d 990, 995 (4th Cir.), cert. denied, 118 S. Ct. 2338 (1998). Because Harris has not shown any entitlement to an evidentiary hearing, we need not address whether such a hearing would be prohibited under § 2254(e)(2). Harris's request for an evidentiary hearing does not meet the narrow standards that are set forth above. Accordingly, we conclude that the district court properly refused to grant an evidentiary hearing on these issues.

Even if we were most liberally to construe Harris's petition as a request for us to review the substance of his ineffective-assistance-of-

17

appellate-counsel claims on the merits, we would affirm the district court. To violate the Sixth Amendment right to counsel as defined by the Supreme Court's holding in Strickland, a counsel's performance must fall outside of the wide range of reasonable assistance and result in such prejudice as to undermine confidence in the outcome of the proceedings. See Fitzgerald, 150 F.3d at 368; cf. Strickler v. Greene, 1999 WL 392982, at *14 (U.S. June 17, 1999) (setting forth the "undermine confidence" standard as appropriate for judging prejudice in a procedural default analysis). Appellate counsel is thus given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle. See Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks omitted). The standard is therefore not what later counsel or courts with the benefit of hindsight believe should have been accomplished in earlier proceedings, but instead whether counsel at the time acted within the liberal bounds of competent representation.

After reviewing the facts presented to this Court, we agree with the district court's conclusion that "it cannot be said that the performance of appellate counsel fell below the standards for effective assistance as stated in Strickland." (J.A. at 541.) Furthermore, assuming arguendo that counsel was ineffective, we conclude that Harris suffered no prejudice because the unpresented claims fall well short of the degree necessary to undermine confidence in the proceeding.**9** Having made this judgment after an independent review of the law and facts, we are confident that the state court's determination that Harris's appellate counsel was not deficient and that Harris suffered no prejudice, fell easily within the parameters of decisions that we must not disturb pursuant to the mandate of 28 U.S.C.A. § 2254(d).

_____

**9** In short, we believe that the unpresented claims had little merit and that it is, at best, unlikely that an appellate court would have granted relief on the merits of these claims had counsel presented them on direct appeal. Counsel's failure to present them on appeal, therefore, in no way undermines our confidence in the proceeding.

18

D.

Harris next claims that the district court erred in finding that the admission of his confession did not violate his Fifth Amendment rights as safeguarded through Miranda v. Arizona , 384 U.S. 436 (1966), and its progeny. Because this claim was adjudicated on the merits by the state courts, we review their holding to determine only whether it was contrary to established Supreme Court precedent, was an unreasonable derivation of controlling Supreme Court precedent, or an unreasonable application of Supreme Court precedent to a new set of facts. See 28 U.S.C.A. § 2254(d); Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998).

When Harris was first interviewed by law enforcement authorities, he was apprised of his Miranda rights and exercised them by declining further discussion absent the presence of counsel. See Harris, 449 S.E.2d at 374. After talking with his brother approximately twelve hours later, Harris, on his own initiative, requested to speak with law enforcement authorities again. See id. After being brought to the sheriff's office pursuant to his own request, Harris began making a confession. The sheriff interrupted him and again reminded him of his Miranda rights, although the sheriff failed to inform Harris that he could discontinue questioning at any time and also did not tell Harris that he could have an attorney immediately. Harris contends that the voluntary reinitiation of communication with law enforcement absent full and fresh Miranda warnings and the immediate availability of an attorney did not satisfy the standards under Miranda and Edwards v. Arizona, 451 U.S. 477 (1981). Instead, Harris contends that absent a reinstruction regarding his right to discontinue questioning at any time and the right to have an attorney's immediate presence, the confession could not have been voluntary under Supreme Court precedent.

The North Carolina Supreme Court addressed this issue in its review of the case and stated:

> There is no reason to believe the defendant, having been fully and properly advised of his Miranda rights approximately twelve hours before his interview with Sheriff Brown, had forgotten them. Certainly he should have known

19

of his right to an attorney before he could be interrogated by the officers for he had exercised his right on that day. It was not necessary for Sheriff Brown to advise the defendant again of his rights under Miranda.

Harris, 449 S.E.2d at 375. A review of controlling United States Supreme Court precedent reveals that this analysis was a quite reasonable interpretation of the law and application to the facts at hand.

The United States Supreme Court's explication of the Fifth Amendment in Miranda controls the admissibility of custodial confessions in state courts based upon whether the defendant was apprised of certain constitutional rights, therefore safeguarding the voluntariness of confessions. See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). In Edwards v. Arizona, 451 U.S. 477 (1981), the Supreme Court discussed the manner in which a defendant who had asserted his Fifth Amendment right to have counsel present could effectively withdraw that assertion:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Id. at 484-85 (footnote omitted). Later, in Oregon v. Bradshaw, 462 U.S. 1039 (1983) (plurality opinion), the Supreme Court explained that a valid waiver of the right to counsel and the right to silence depends upon "whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Id. at 1046 (internal quotation marks omitted). The Supreme Court continued, "As we have said many times before, this determination depends upon the particular

20

facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." Id. (internal quotation marks omitted). Thus, whether Harris's Fifth Amendment rights were violated depends upon whether he was informed of his rights in accordance with Miranda, whether he withdrew any assertion of those rights by voluntarily initiating a conversation with law enforcement, and whether he waived his rights in light of the totality of the circumstances.

In this case, there is no debate as to whether Harris received the requisite warnings under Miranda on the same day he confessed. Moreover, there is no dispute that it was Harris, and not law enforcement, that initiated the discussion following his earlier request to have counsel present. Finally, Harris was again informed of his Miranda rights only twelve hours after originally hearing them and exercising them.[10] Under these circumstances, Harris clearly made a knowing and intelligent waiver of his Fifth Amendment right to be free from compelled self-incrimination. In our judgment, these occurrences evidence that the circumstances of Harris's confession did not violate Miranda or its progeny. The North Carolina Supreme Court's judgment on this point was well within the narrow bounds of review mandated by § 2254(d), and we affirm the district court on this point.

E.

Harris finally claims that the district court erred in treating several issues as procedurally defaulted. Specifically, Harris asserts that the following claims were improperly treated as procedurally defaulted: (1) that the service of the trial judge's secretary on the jury deprived Harris of his Sixth Amendment right to an impartial jury; (2) that Harris's absence at a videotaped examination of the victim's treating physician violated Harris's Confrontation Clause rights; and (3) that his trial counsel was constitutionally ineffective for failing to raise a timely claim that Harris's Double Jeopardy Clause rights were vio-

_____

[10] The mere passage of time between the original Miranda warnings and a confession generally does not taint a confession. See United States v. Frankson, 83 F.3d 79, 83 (4th Cir. 1996). Therefore, even if the sheriff had not repeated the Miranda warnings, there would not be any violation of Harris's Fifth Amendment rights.

21

lated because a new jury was empaneled for the sentencing portion of the trial.

This Court may not review claims in a federal habeas petition if they have been defaulted under an independent and adequate state procedural rule as applied by the state courts unless the habeas petitioner can demonstrate cause for the default and prejudice resulting therefrom, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 731-32, 750 (1991). A state rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

The district court determined that these issues were procedurally defaulted based upon the superior court's finding during the 1996 MAR proceeding that the issues were barred from review under § 15A-1419(a)(3) (Michie 1997). Section 15A-1419(a)(3) states that a MAR may be denied if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. Gen. Stat. § 15A-1419(a)(3). It is undisputed that on direct appeal Harris failed to raise the issue of the superior court judge's secretary's service on the trial jury or the fact that Harris did not attend the out-of-court examination of the victim's physician.

We have previously determined § 15A-1419(a)(3) to be an adequate and independent ground, and Harris does not argue otherwise. See Williams v. French, 146 F.3d 203, 210 (4th Cir. 1998), cert. denied, 119 S. Ct. 1061 (1999). Instead, Harris argues that ineffective assistance of counsel on appeal constitutes sufficient cause to excuse the default. Although he does not say, we presume that Harris claims the resulting prejudice to be the loss of winning issues on appeal.

Because we conclude that two of Harris's claims were properly treated as procedurally defaulted, but the third was not, we address this issue in two parts.

22

1.

We first address Harris's position that this Court should review the merits of his Sixth Amendment right to an impartial jury claim and his Confrontation Clause claim because ineffective assistance of his appellate counsel constitutes adequate cause to excuse his failure to raise the claims on direct appeal.

Constitutionally ineffective counsel is among the recognized factors for establishing cause for default. See Williams, 146 F.3d at 209-10. Before ineffective assistance of counsel can be presented as cause for procedural default in a federal habeas proceeding, however, the ineffectiveness claim must first be presented to the state courts as an independent claim. See id. at 210 n.9. If the ineffective-assistance-of-counsel claim is properly presented to the state courts, then it can be evaluated as a source of cause for procedural default in a federal habeas proceeding. In order to constitute cause for procedural default, counsel's conduct must have constituted ineffective assistance of counsel under the United States Constitution -- i.e., the Strickland standard. See id. at 210. Upon a finding that the counsel's representation is in fact constitutionally ineffective, then that conduct is imputed to the state and it can establish causation for the procedural default. See id. Because Harris raised the ineffectiveness-of-appellate-counsel claims before the state courts, we may evaluate them as a potential source of cause for procedural default.

Whether Harris's counsel were in fact constitutionally ineffective on appeal, depends upon an evaluation of their conduct in accordance with the Strickland standard. As we stated in part C., however, we have determined that appellate counsel were not ineffective for failing to present claims for violations of Harris's Confrontation Clause rights or the Sixth Amendment right to an impartial jury. Because we have concluded that Harris's appellate counsel were not constitutionally ineffective, ineffective assistance of counsel cannot constitute sufficient cause for procedural default, and we must affirm the grant of summary judgment to the State on this issue. **11**

_____

**11** We also note that Harris's substantive claims do not merit relief. Neither his claim that the service of the trial judge's secretary on the jury

23

2.

We now come to Harris's claim that his allegation of ineffective assistance of trial counsel for failing to object to the empaneling of a new jury during the sentencing phase of the trial should not have been treated by the district court as procedurally defaulted.

We agree, but not for the reason advanced by Harris. As both parties inexplicably fail to mention, it is improper to treat an ineffective-assistance-of-trial-counsel claim as procedurally defaulted under § 15A-1419(a)(3) because North Carolina does not require ineffective-assistance-of-counsel claims to be raised on direct appeal. See State v. Sneed, 201 S.E.2d 867, 871 (N.C. 1974) ("Our research discloses that the majority of the decisions relating to the alleged failure of counsel to render effective representation arises out of post-conviction proceedings."); State v. Dockery , 336 S.E.2d 719, 721 (N.C. App. 1985) ("The accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal."). Because this claim was improperly treated as procedurally defaulted by the district court, we will review its merits.

Before embarking on a review of the merits, we note that the superior court alternatively held that "the alleged deficiencies in counsel's representation did not prejudice the defendant." (J.A. at 167.) Because this claim was adjudicated on the merits by the state courts, we apply the standards of review contained in the AEDPA and review the state court holding only to determine whether it was contrary to established

_____

deprived him of his Sixth Amendment right to an impartial jury, nor his claim that the videotaped examination of the victim's treating physician violated his Confrontation Clause rights, violated Harris's constitutional rights. Based upon our review of the facts and the applicable law, we determine that Harris effectively waived his Confrontation Clause right to be present at the physician's examination under United States v. Gagnon, 470 U.S. 522, 526-27 (1985), and in any event, he showed no prejudice arising from his absence. Furthermore, the service of the superior court judge's secretary was not a violation of Harris's right to an impartial jury, especially in light of the significant safeguards implemented by the superior court to avoid any impropriety.

24

Supreme Court precedent, was an unreasonable derivation of controlling Supreme Court precedent, or an unreasonable application of Supreme Court precedent to a new set of facts. See 28 U.S.C.A. § 2254(d); Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998).

To determine whether a trial counsel's performance is constitutionally ineffective, we look to the standards announced by the Supreme Court in Strickland. Strickland provides that a petitioner must demonstrate both that his trial counsel's representation was deficient and that he was prejudiced thereby. See Strickland, 466 U.S. at 687; Howard v. Moore, 131 F.3d 399, 421 (4th Cir. 1997) (en banc), cert. denied, 119 S. Ct. 108 (1998). In making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Harris claims his trial counsel were ineffective because they failed to object to the superior court's empaneling of a new jury to serve in the sentencing phase of the trial. He urges that this failure was a violation of his right to be free from double jeopardy under both the North Carolina and United States constitutions. Harris first cites North Carolina case law and statutory provisions to support his position. See N.C. Gen. Stat. § 15A-2000(a)(2) (Michie 1997); State v. Lechat, 343 S.E.2d 872 (N.C. 1986); State v. Bondurant, 309 S.E.2d 170 (N.C. 1983); State v. Crocker, 80 S.E.2d 243 (N.C. 1954). A review of this authority, however, reveals that the superior court's actions at trial were likely proper under North Carolina law.[12] Bondurant stands for

_____

[12] Ordinarily, we would not analyze the substantive application of state law in a habeas petition. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). This claim, however, is couched in terms of ineffective assistance of trial counsel and because it involves the omission of a challenge in the state courts, the superior court did not have an opportunity to address fully the underlying issue at trial. We, therefore, must address the substance of the state law to assess the performance of counsel.

25

the unremarkable proposition that "[s]electing a jury composed both of those opposed and unopposed to capital punishment for the purpose of determining guilt and then, at the sentencing phase, replacing those opposed by alternates who are unopposed to the death penalty" is improper under North Carolina law. Bondurant , 309 S.E.2d at 176. Lechat addresses the improper and premature declaration of a mistrial while the jury was deliberating the guilt of the defendant, and does not touch upon the empaneling of a second jury during the sentencing phase. See Lechat, 343 S.E.2d at 878. Finally, Crocker also discusses the propriety of declaring a mistrial during a portion of the guilt phase of the trial. See Crocker, 80 S.E.2d at 244-46. None of these cases stand for the proposition that it is patently improper under North Carolina law to empanel a new jury for the guilt phase of a trial.

Most dispositive of the issue is the North Carolina statute cited by Harris, § 15A-2000(a)(2), which states that"[i]f the trial jury is unable to reconvene for a hearing on the issue of penalty after having determined the guilt of the accused, the trial judge shall empanel a new jury to determine the issue of the punishment." N.C. Gen. Stat. § 15A-2000(a)(2). Our review of the record discloses that a guilty verdict was entered against Harris on May 14, 1992. On May 18, 1992, the sentencing phase of the trial was continued until May 26, 1992, because of the illness of Harris's lead counsel. On that date, the superior court held an in camera proceeding at which Harris requested the removal of Mr. Merritt as his lead counsel, which the superior court eventually allowed after entertaining a request from Mr. Merritt to withdraw. Faced with the need to replace lead counsel and to allow sufficient time for the new counsel to familiarize himself with the case, the superior court determined that the guilt-phase jury would be unable to continue service indefinitely. Therefore, the superior court dismissed the jury with the intention of empaneling a new jury when the sentencing phase could proceed. We do not believe that this situation exceeds the express guidelines of§ 15A-2000(a)(2). By no means can we say that counsel was ineffective for not objecting to the discharge of the jury when it was done to facilitate Harris's own request to have a new lead counsel appointed. There was, therefore, no objection for counsel to lodge under the North Carolina Constitution.

Harris also relies on a federal case holding that absent the voluntary consent of a defendant, a declaration of a mistrial that amounts

26

to an abuse of discretion would make any later prosecution a violation of the Double Jeopardy Clause. See United States v. Jorn, 400 U.S. 470, 486 (1971). However, the United States Supreme Court has expressly held that a sentencing proceeding is not a successive prosecution. See Schiro v. Farley, 510 U.S. 222, 230 (1994) ("Our prior decisions are inconsistent with the argument that a first sentencing proceeding can amount to a successive prosecution."). Based upon the circumstances of this case, we are confident in concluding that the sentencing proceeding did not amount to a successive proceeding implicating the Double Jeopardy Clause. There was, therefore, no objection for counsel to lodge under the United States Constitution.

Our review reveals that counsel's actions in regard to the empaneling of a new jury at sentencing demonstrated no deficiencies and could not have resulted in prejudice to Harris. The state court's judgment in the 1996 MAR was well within the bounds of § 2254(d) and, accordingly, we find no grounds for relief on this issue.

III.

For the foregoing reasons, we affirm the district court's grant of summary judgment and the dismissal of Harris's petition for a writ of habeas corpus.

AFFIRMED

27